NOT FOR PUBLICATION                    [Docket No. 1]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

TERRY F. REED,

        Plaintiff,

    v.

SOCIAL SECURITY ADMINISTRATION
JOANNE B. BARNEHART,
COMMISSIONER,

        Defendant.

Civil No. 07-5099 (RMB)

**OPINION**

APPEARANCES:

Robert Anthony Petruzelli, Esq.
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By: Maria Fragassi Santangelo
       Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**BUMB**, United States District Judge:

**I. INTRODUCTION**

    Terry F. Reid ("Plaintiff") brings this appeal seeking

judicial review of the final decision of the Commissioner of

1

Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  This Court has jurisdiction over the instant matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, this Court will affirm the decision of the Commissioner.

## II. BACKGROUND

### A.   Procedural Background

On April 20, 2004, Plaintiff filed applications for DIB and SSI benefits alleging a disability onset date of February 2003.[1] (Administrative Record ("R.") at 66-69, 338-41).  The claims were denied initially and upon reconsideration.  (R. at 30-34, 38-41). Plaintiff filed a timely written request for a hearing on February 8, 2005.  (R. at 43).  A hearing was held before Administrative Law Judge Mark G. Barrett ("ALJ") on November 8, 2005, in Voorhees, New Jersey.  (R. at 355-67).  On January 20, 2006, the ALJ issued a decision denying Plaintiff's claims.  (R.

_____

[1] There are several dates in the record regarding the alleged onset of Plaintiff's disability.  Plaintiff stated that the onset date was February 2003 on her application for DIB.  (R. at 66).  She stated that the onset date for arthritis and bursitis was 1999 and depression was 2002 on her application for SSI.  (R. at 338).  During the hearing, the ALJ stated, and Plaintiff's attorney confirmed, that the onset date was July 26, 2003.  (R. at 360).

at 13-25).  Plaintiff then filed an appeal of the ALJ's decision
to the Appeals Council.  (R. at 12).  The Appeals Council denied
the appeal on August 31, 2007, which became the final decision of
the Commissioner.  (R. at 5-8).  On October 29, 2007, Plaintiff
filed the above-captioned action in this Court seeking review of
the Commissioner's decision.

   **B.   Factual Background**

   Plaintiff was born in 1956 and was forty nine years of age
at the time of the ALJ's decision.  She has a Graduate
Equivalency Diploma, ("GED"), has completed some college, and has
past work experience as a manufacturing assembler, production
laborer, convenience store cashier, and manufacturing inspector.
(R. at 65, 85, 90, 239).  Plaintiff claims that she was
terminated from her last job, a position she held from June 2003
to July 2003, for chronic lateness.  (R. at 84).  She alleges
that the medication she took for depression caused sleeplessness
and, as a result, she had difficultly getting to work in the
morning.  (Id.).  According to Plaintiff, she has been unable to
work since July 2003 because she suffers from arthritis,
bursitis, depression, bipolar disorder, migraines.  (Id.).

   Plaintiff also has a history of substance abuse, although
the record is unclear regarding specific periods.  She has
admitted to first experimenting with cocaine in 1987.  (R. at
240).  Apparently, she had a ten year period of sobriety;

however, she resumed this habit while caring for her terminally ill father, who died in 1997. (R. at 336, 240). Additionally, she admits to self-medicating for depression and anxiety (R. at 240), however the record does not indicate what remedies she used.

### 1. Medical History, Condition, and Treatment

Prior to 2003, Plaintiff had never received mental health treatment for substance abuse, psychological, or emotional problems. (R. at 264, 266). On May 1, 2003, Plaintiff was evaluated at Maryville, Vineland Outpatient Services ("Maryville") for chemical dependency due to a charge of "Operating While Intoxicated." (R. at 263). She reported suffering from serious depression and had experienced thoughts of suicide, though there were no suicide attempts. (R. at 266). She complained she felt considerably troubled by her employment problems, medical treatment, and psychological issues. (R. at 263-64, 266). The evaluation report recommended intensive outpatient treatment due to her substance dependency. (R. at 262, 267).

On April 8, 2004, Plaintiff was admitted to the mental health unit at South Jersey Health Care. (R. at 142). She had suicidal ideations and had attempted to commit suicide three times in the previous two weeks. (Id.). While she denied alcohol use, she admitted to using cocaine, which was confirmed

4

by a drug screen.  (Id.).  Plaintiff was stabilized on Depakote
and Zoloft and was diagnosed with depression, cocaine abuse, and
possible bipolar and borderline personality disorders.  (R. at
144).  Additionally, a neurology consult revealed mixed muscle
tension and rare migraine headaches, for which she was prescribed
Flexeril.  (R. at 171).  Plaintiff's global assessment of
functioning ("GAF") was rated 21 upon her admission and 45-50
upon her discharge.[2]  (R. at 144).  She was referred to a
"Partial Day Care Program" and was advised to continue the
intensive outpatient program at Maryville for substance abuse and
relapse prevention.  (R. at 237).

     Plaintiff underwent physical and psychiatric exams in July
2004 in conjunction with her disability claim.  A review of her
history (as documented by Dr. Khona, the consulting physician)
revealed complaints of migraines, arthritis in the lower back,
leg spasms and swelling, insomnia, depression, and bipolar
illness.  (R. at 268).  However, the internal medicine
examination revealed no positive physical findings except for

_____

[2] A GAF score between 21 and 30 indicates "behavior is
considerably influenced by delusions or hallucinations OR
serious impairment in communications or judgment OR inability
to function in all areas."  A GAF score between 41 and 50
indicates "[s]erious symptoms (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) OR any serious
impairment in social, occupational, or school functioning
(e.g., no friends, unable to keep a job).  Diagnostic and
Statistical Manual of Mental Disorders, Fourth Edition, Text
Revision, 34, Washington, DC, American Psychiatric
Association, 2000. ("DSM-IV-TR").

exaggerated symptoms of pain.  (R. at 271).  The report noted that "compared to her complaints of pain, her pain medications are in the low range." (Id.).  Dr. Moore, the consulting psychologist, diagnosed Plaintiff with Major Depressive Disorder without psychotic features and cocaine abuse in partial sustained remission.  (R. at 277).

**2. Hearing before the ALJ**

Plaintiff failed to appear at the hearing before the ALJ. The ALJ, noting her absence, cited the confirmation receipt in which Plaintiff confirmed she received the Notice of Hearing and that she would appear.  (R. at 65, 357).  He then proceeded with the hearing in the presence of Edward A. Lopez, Plaintiff's attorney who the ALJ described as "familiar with Social Security laws and regulations." (R. at 357).  The ALJ permitted Lopez to submit additional evidence, make an opening statement, and present an argument on behalf of Plaintiff.  Lopez highlighted various parts of the record describing Plaintiff's condition and proposed that Plaintiff's impairments were medically equivalent to a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]  (R. at 359-60).  Additionally, the ALJ questioned Lopez regarding Plaintiff's drug use:

---

[3] A claimant automatically is considered disabled if his impairment meets or medically equals an impairment listed in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  This terminology is explained in the discussion section.

> ALJ: Okay.  How do you deal or explain away her
> fondness for cocaine?
> ATTY:  Judge, the, records I showed indicated that
> she's been in – in remission for at least three years I
> think; that she had been clean and sober.
> ALJ: Okay.  Okay, and the alleged onset date is only
> July '03, which is only two years, so that would cover
> that period.
> ATTY: Correct.

(R. at 360).

The ALJ also took testimony from Margaret Preno, a vocational expert.  (R. at 360-66).  Preno explained that Plaintiff's past work, consisting of basically two occupations, included both unskilled and semi-skilled jobs, and that some jobs fell within the light physical demand level, while other jobs fell within the heavy physical demand level.  (R. at 361-62).  The ALJ asked Preno to consider a hypothetical individual with Plaintiff's age, education, and experience, as well as moderately limited abilities to complete a normal workday without interruption from psychologically based symptoms, to respond appropriately to changes in the work setting, and to make plans independently of others.  Preno responded, referencing the functional limitations identified by Plaintiff's State Agency mental evaluation (R. at 295-98), that Plaintiff could not return to her past relevant work ("PRW") or any other type of work.  (R. at 364).  However, Preno further testified that based on the functional limitations described in Plaintiff's State Agency physical evaluation (R. at 299-304), and not taking into

consideration any mental impairments, Plaintiff could perform her
PRW as a manufacturing inspector.  (R. at 365).  Preno indicated
that this job was available in the national economy.  (R. at
366).

III. STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, the
Court must uphold the Commissioner's factual decisions if they
are supported by "substantial evidence."  42 U.S.C. §§405(g),
1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83, (3d. Cir. 2000).
This means, "'more than a mere scintilla.  It means such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).
Where the ALJ's findings of fact are supported by substantial
evidence, this Court is bound by the findings "even if [it] would
have decided the factual inquiry differently."  Fargnoli v.
Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel,
181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court must "review
the evidence in its totality, but where it is susceptible of more
than one rational interpretation, the Commissioner's conclusion
must be upheld."  Ahearn v. Commissioner of Social Sec., 165 Fed.
Appx. 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d

64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  Access to the Commissioner's reasoning is essential to meaningful court review:

> [u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted); see also Guerrero v. Commissioner of Social Sec., 2006 WL 1722356 at *3 (D.N.J. June 19, 2006) (stating that is the ALJ's responsibility "to analyze all the evidence and to provide adequate explanations when disregarding portions of it") (internal citation omitted).

While the ALJ must review and consider pertinent medical evidence, review all non-medical evidence, and "explain [any] conciliations and rejections," Burnett v. Commissioner of Social Sec., 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004); see also Fargnoli v. Halter, 247 F.3d

34, 42 (3d Cir. 2001) ("[a]lthough we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law").  Overall, the Court must set aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

In addition to the substantial evidence inquiry, this Court must review whether the administrative determination was made upon application of the correct legal standards.  Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  This Court's review of legal issues is plenary.  Sykes, 228 F.3d at 262; Schaudeck v. Commissioner of Social Sec., 181 F.3d 429, 431 (3d Cir. 1999).

## IV. DISCUSSION

### A. Defining Disability

The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v); Giese v. Commissioner of Social Security, 251 Fed. Appx. 799, 801-02 (3d. Cir 2007).

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") and has lasted or is expected to last for a continuous period of at least twelve months, or is expected to end in death, the claimant will be found "disabled."

4. If the claimant is found to have the residual functional capacity ("RFC")[4] to still perform his past relevant work ("PRW"), he will be found "not disabled."

---

[4] Defined as what a person is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a) and 416.945.

5.   Finally, the Commissioner will consider the claimant's RFC, age, education and work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

Id.

This analysis involves a shifting burden of proof.  <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform[.]"  <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

In the case of an individual suffering from alcoholism or drug addiction, the Act additionally requires that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  Under the Social

Security Administration's ("SSA") regulations, the "key factor" in determining whether a claimant's alcohol or drug abuse is a material contributing factor to the claimant's disability is "whether we would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." ;1597;1597 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

The ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether any of the claimant's remaining limitations would be disabling. ;1647;1647 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability.";1693;1693  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).  However, if the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and . . . [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." ;1757;1757 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

**B. The ALJ's Decision**

The ALJ found that Plaintiff had satisfied the requirements of step one because she has not engaged in any substantial gainful activity since the alleged onset of disability (ALJ Opinion at 2, 6) and that Plaintiff's arthritis, depression, and substance abuse are "severe" within the meaning of 20 C.F.R. § 416.920(c). (<u>Id.</u>).

The ALJ then concluded that Plaintiff's mental impairments meet the requirements of Listings 12.04 (Affective Disorders) and 12.09 (Substance Abuse Disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1. (<u>Id.</u> at 5). Specifically, the ALJ found that Plaintiff suffers from depression characterized by anhedonia, sleep disturbance, difficulty concentrating or thinking, and suicidal thoughts, as well as a substance abuse disorder, resulting in "marked" limitations in maintaining social functioning and "marked" difficulties in maintaining concentration, persistence and pace. (<u>Id.</u>). However, he found this condition aggravated by ongoing drug use. (<u>Id.</u> at 6). Accordingly, he concluded that substance abuse was a contributing factor material to a finding of "disability" and Plaintiff could not be found disabled under the Act. (<u>Id.</u> at 6).

The ALJ next considered whether Plaintiff's remaining limitations, without the limitations caused by substance abuse, would render Plaintiff disabled. He concluded that neither

14

Plaintiff's physical impairment, arthritis, nor mental impairment, depression, which he found was aggravated by ongoing drug use, meet or equal the criteria of any listed impairment. (Id.).

The ALJ found that, absent drug abuse, Plaintiff retained the RFC to perform the exertional requirements of light work activity. (Id. at 10). He concluded, with the guidance of a vocational expert's testimony, that her impairments did not prevent Plaintiff from performing her PRW as a manufacturing inspector. (Id.). Accordingly, the ALJ found that Plaintiff is not disabled and, therefore, not entitled to benefits. (Id.).

**C. Plaintiff's Appeal**

Plaintiff raises two arguments on appeal. She contends that the ALJ failed to follow administrative guidelines and issue a Notice to Show Cause following her failure to appear at the hearing before the ALJ. Additionally, she asserts that the ALJ's determination that her drug use was a contributing factor material to the determination of disability was not supported by substantial evidence. As discussed below, this Court finds that each argument lacks merit.

### 1. The ALJ's Failure to Follow Applicable Guidelines when Plaintiff Failed to Appear For Hearing

Plaintiff complains that the ALJ erred by not issuing a Notice to Show Cause to determine why she failed to appear at the

15

hearing before the ALJ, in accordance with the SSA's internal policy manual, The Hearings, Appeals and Litigation Law Manual ("HALLEX").[5]  Plaintiff contends that she is an essential witness for the proper determination of her case and she should have been given the opportunity to answer questions regarding her drug use. The Commissioner responds by asserting that the guidelines do not carry the force of law and that Plaintiff constructively waived her right to appear.

In making her argument, Plaintiff relies on HALLEX I-2-4-25 (D), which states:

> if a claimant's representative appears at a scheduled hearing without the claimant:
>
> The ALJ should advise the claimant's representative that a Notice to Show Cause will be issued asking the claimant why he or she did not appear, and why a supplemental hearing should be held.  If the claimant fails to respond to the Notice to Show Cause or fails to provide good cause for failure to appear at the scheduled hearing, the ALJ may then determine that the claimant has constructively waived his or her right to appear for a hearing, and the ALJ may issue a decision on the record.
>
> If the claimant provides good cause for failure to appear, the ALJ will offer the claimant a supplemental hearing to provide testimony.

_____

[5] HALLEX, promulgated by the Associate Commissioner of Hearings and Appeals, is intended to convey "guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff."  Social Security Administration, Hearings, Appeals and Litigation Law Manual, § I-1-0-1, available at http://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html.

HALLEX I-2-4-25 (D).  Plaintiff reads the language of HALLEX as requiring an ALJ to issue a Notice to Show Cause.  (Pl. Br. at 7).  She submits that "the ALJ does not have the luxury of discretion" in following this guideline.  (Id.)

The Third Circuit has consistently held that manuals meant for issuing official Social Security policy and operating instructions do not provide an independent source of the Commissioner's duties, stating that such materials "do not have the force of law." Edelman v. Comm'r of Soc. Sec., 83 F.3d 68, 71 n. 2 (3d Cir. 1996) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981)).  While not precedential, the Third Circuit confirmed in its recent decision in Bordes that HALLEX creates no "judicially-enforceable rights." Bordes v. Comm'r of Soc. Sec., 235 Fed. Appx. 853, 859 (3d Cir. May 18, 2007) ("HALLEX provisions . . . lack the force of law").  Moreover, the court held that even if a more stringent approach utilized by the Fifth Circuit were to apply, that there is no violation of fundamental fairness where a plaintiff cannot demonstrate that prejudice resulted from a failure to follow the HALLEX guidelines. Bordes, 235 at 859 (citing Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000))

Despite her complaints, Plaintiff does not demonstrate that the ALJ's failure to issue a Notice to Show Cause was prejudicial.  Plaintiff argues her testimony was critical as the record contains contradictory evidence regarding periods of drug

use and remission.  (Pl. Br. at 7).  A review of the transcript,
however, indicates that this evidence was presented to the ALJ.
The ALJ afforded Plaintiff's attorney the opportunity to answer
questions regarding Plaintiff's substance abuse:

> ALJ: Okay.  How do you deal or explain away her
> fondness for cocaine?
> ATTY:  Judge, the, records I showed indicated that
> she's been in – in remission for at least three years I
> think; that she had been clean and sober.
> ALJ: Okay.  Okay, and the alleged onset date is only
> July '03, which is only two years, so that would cover
> that period.
> ATTY: Correct.

(R. at 360).  Given this colloquy, the ALJ did receive guidance
on Plaintiff's drug history.

The Commissioner also asserts that Plaintiff constructively
waived her right to appear at the hearing.  Under the Social
Security Rulings, a claimant's waiver of personal appearance at a
hearing is valid only if it is in writing and confirms that the
claimant is aware of certain rights.  Social Security Ruling 79-
19, 1979 WL 15541 at * 1 (S.S.A., November 30, 1978).  Although
there are no published cases discussing the SSR 79-19 waiver
within this circuit, the Third Circuit has noted that remand is
warranted only if the ALJ's failure to holding a hearing where
claimant is present prejudiced the claimant.  Biswas v. Comm'r of
Soc. Sec., 2007 WL 580523 at *1 (3rd Cir. June 30, 2007) (citing
Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981)).

As stated above, Plaintiff does not demonstrate prejudice. Plaintiff received and acknowledged in writing notice of the scheduled hearing,[6] her interests were adequately represented at the hearing, and she failed to contact the ALJ to explain her absence in the more than two months before he issued his decision.[7]  Plaintiff fails to show that the presentation of her case would have improved if the ALJ issued a Notice to Show Cause and Plaintiff received a supplemental hearing.  Plaintiff does not present any evidence to suggest that the ALJ would have found her assertions more credible than those of her attorney. Additionally, she does not allege that she had objective medical evidence confirming her contentions of her remission that was <u>not</u> in the possession of Lopez or the ALJ.  Accordingly, it is not evident that stricter compliance to HALLEX would have produced a different outcome and, thus, that the ALJ's failure to issue a Notice to Show Cause was prejudicial.

_____

[6] On the document, signed by Plaintiff on September 6, 2005, the date, time, and location of the hearing is listed, the warning that the "hearing may be dismissed if you do not attend the hearing and cannot give a good reason for not attending" appears, and the box stating "<u>I will be present at the time and place</u> shown on notice of hearing" is checked. (R. at 65) (emphasis in original).

[7] Though the record contains a letter from Plaintiff explaining that she became lost en route to the hearing, it was written over two weeks after the ALJ issued his decision. (R. at 352-54).  The letter, dated February 6, 2006, was attached to a document Plaintiff's attorney submitted to the Appeals Council on May 15, 2006.  (R. at 348-50).

### 2. The ALJ's Determination that Plaintiff's Drug Use was a Contributing Factor Material to a Finding of Disability

Plaintiff also avers that the ALJ erred in his determination that Plaintiff's substance abuse was a contributing factor material to a finding of disability.[8]  She argues that her drug use was in remission and, therefore, the ALJ's finding of ongoing substance abuse was incorrect.  Additionally, Plaintiff contends that even if she continued to use drugs, the evidence does not support the ALJ's conclusion that her mental limitations would be any less severe absent her substance abuse.

This Court's review does not involve reweighing the evidence, but rather is limited to determining whether it is supported by substantial evidence.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "'does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

_____

[8] In her brief, Plaintiff raises no argument concerning the ALJ's determination that her physical impairments (i.e. arthritis) failed to meet or medically equal the Listings. Consequently, this discussion is limited to a discussion of the ALJ's conclusions regarding her mental limitations.

Additionally, the court notes that Plaintiff cites HALLEX I-5-3-14A as providing instruction on making the materiality determination in drug and alcohol abuse case.  (Pl. Br. at 8-9).  As Commissioner observes, this provision has been archived and is no longer in effect.

In the case of an individual suffering from drug addiction, the key inquiry in determining whether substance abuse was a "contributing factor material to the determination of disability" is whether the plaintiff "would still [be] ... disabled if [she] stopped using . . . [drugs]."  20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).  The plaintiff, however, has the burden of proving that she would have been disabled even without the effects of substance abuse.  Brown v. Barnhart, 2006 WL 1479638 at * 2 (E.D. Pa. May 23, 2006) (citing Doughty v. Apfel, 245 F.3d 1274, 1279-80 (11th Cir. 2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 498-99 (5th Cir. 1999)).

This Court does not find that the ALJ erred in his determination that Plaintiff's drug use was ongoing.  Plaintiff last indicated she abused drugs in April 2004.  (Pl. Br. at 12, R. at 240).  The ALJ cited subsequent medical treatment and evaluations that continued to document this condition.  On monthly progress reports completed on May 6, 2004 and June 2, 2004, the Maryville counselor did not affirm that Plaintiff had maintained sobriety.  (R. at 252).  The May 12, 2004 screening at Vineland Counseling included a diagnosis of cocaine abuse.  (R. at 336).  Dr. Moore, a consultative psychologist, diagnosed Plaintiff with cocaine abuse in only "partial remission" on July 24, 2004.  Plaintiff, in response to these findings, puts forth

no objective medical evidence to support her assertion that she maintained a period of sobriety.

Plaintiff's contention that the ALJ improperly determined the severity level of her mental impairments is also without merit.  She complains that the ALJ failed to cite any evidence in the record that indicates Plaintiff's mental impairments would be less severe absent drug abuse.  (Pl. Br at 13).  However, a review of the opinion reveals that the ALJ did refer to medical evidence in conjunction with his findings.  Two consultative examinations discussed by the ALJ, completed during the time Plaintiff purportedly abstained from drug use (i.e. since April 2004), support his conclusion.  In July 2004, Dr. Moore found that although Plaintiff "appear[ed] to have difficulty dealing with stress," vocationally she appeared capable of maintaining attention for and performing tasks, interacting appropriately with others, and regularly attending to a routine.  (R. at 277).  Additionally, the review conducted by the SSA physician in August 2004 determined that Plaintiff's Affective and Substance Addiction Disorders only produced mild functional limitations. (R. at 291).  Thus contrary to Plaintiff's claim, there is evidence to support the ALJ's conclusion.

Plaintiff further argues that the ALJ could not have been able to distinguish the effects of substance abuse and its impact on her mental impairments.  She relies on an emergency teletype

from July 2, 1996, in which the SSA presented guidelines to adjudicators on how to address issues relating to findings of drug and alcohol abuse.  Social Security Administration, Questions and Answers Concerning DAA from the 07/02/96 Teleconference, No. EM-96200, at 29[9] (Aug. 30, 1996), <u>available at</u> https://secure.ssa.gov/apps10/.  In that bulletin, adjudicators were instructed that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol use] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." <u>Id.</u>

These provisions do not aid Plaintiff.  Here, the ALJ did not find it impossible to separate Plaintiff's depression aggravated by drug abuse from her depression when allegedly sober.  EM-96200 advises that the "[t]he most useful evidence [when making a materiality determination] is that relating to a period when the individual was not using drugs/alcohol." <u>Id.</u>  As observed, the ALJ cited evidence that Plaintiff's mental impairments, evaluated when she purportedly abstained from drug use, failed to reach the severity required for a disability finding.  (ALJ Opinion at 6, 9-10).  Plaintiff puts forth no objective medical evidence contradicting these findings.

---

[9] "29" refers to Question 29 and the answer thereto.

Despite Plaintiff's complaints to the contrary, a review of the record cited by the ALJ supports his materiality determination.  Furthermore, courts within this circuit considering this issue have placed on the plaintiff the burden of proving that a disability would exist in the absence of drug or alcohol abuse.  <u>See</u> <u>Brown</u>, 2006 WL 1479638 at * 2; <u>Lang v.</u> <u>Barnhart</u>, 2006 WL 3858579 at *4 (W.D. Pa. Dec. 06, 2006).  Plaintiff has not carried this burden.  Given Plaintiff's failure to present any objective medical to support her contentions, this Court affirms the ALJ's conclusions as supported by substantial evidence.

**V. CONCLUSION**

For the aforementioned reasons, this Court finds that there is substantial evidence to support the ALJ's materiality finding and that the ALJ applied the correct legal standards.  Accordingly, the ALJ's decision is affirmed.  An appropriate Order will issue this date.

Dated: <u>July 18, 2008 </u>                    <u>s/Renée Marie Bumb         </u>
                                           RENÉE MARIE BUMB
                                           UNITED STATES DISTRICT JUDGE